# Neely, Appellant, *v.* Bair's Executor.

[Marked to be reported.]

*Executors and administrators—Contract—Evidence.*

An executor sold certain property of his decedent, and agreed that the purchaser should pay for it by giving credit upon an account which he claimed against decedent's estate. Before the auditor appointed to distribute the estate, the price of the property was fully accounted for and distributed among the creditors of decedent, and the purchaser's personal account was excluded from participation in that distribution. *Held*, that the contract was valid, and that the executor could not subsequently recover the price of the property from the purchaser.

*Evidence—Examination of witness—Practice.*

In the examination of a witness as to a conversation between plaintiff and defendant, the proper way is to ask the witness what occurred in the conversation, and not to direct his attention specifically to any particular matter.

*Assignment of error—Evidence.*

An assignment of error to the admission of evidence which fails to set forth the evidence admitted under the exception, is improper.

Argued May 15, 1893. Appeal, No. 10, Jan. T., 1893, by plaintiff, John Neely, from judgment of C. P. York Co., August T., 1890, No. 56, on verdict for defendant, Samuel M. Fulton, executor of John Bair, deceased. Before STER-RETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit for price of personal property sold to plaintiff's decedent. Before BITTENGER, J.

The defendant, John Bair, died after the trial of the case. On July 12, 1892, his executor, Samuel M. Fulton, became a party of record.

Plaintiff's statement set forth the articles sold and the aggregate amount. Pleas, non assumpsit, payment, set-off and the statute of limitations. Defendant also filed an affidavit of defence setting up a contract that a debt due defendant by plaintiff's decedent was to be set off against the amount due by defendant. A rule of court provided for special notice of any defence which theretofore might have been specially pleaded, such notice to " contain a specific averment of facts intended to be offered in evidence sufficient to constitute a good legal or equitable defence ; and, in default of such notice, the defence shall be confined to matters strictly admissible under the pleas filed."

The notice of special matter was as follows :

" In compliance with your request of Nov. 17, 1890, calling upon us to furnish you with a specification of the matters and facts proposed to be given in evidence under the pleas of payment and set-off in the above case, we reply that at the trial of said case we propose to prove that at the time of the death of Thomas Neely, late of Lower Chanceford township, in said county of York, (of whose estate the said John Neely, the plaintiff in this suit, is one of the administrators,) to wit: on May 30, 1884, the said Thomas Neely was indebted to the said John Bair, the defendant in this suit, in his individual right.

" That after the death of said Thomas Neely the black horse, top wagon or buggy, buggy tongue and set of harness mentioned in the plaintiff's statement filed in this case, being part

of the estate of the said Thomas Neely, came into the possession of the administrators of the said decedent.

" That after the death of the said Thomas Neely, to wit: on or about June 26, 1884, the said John Neely, the plaintiff in this case, as one of the administrators of the said Thomas Neely, sold to this defendant the said black horse, buggy, buggy tongue and set of harness mentioned in said plaintiff's statement, for the respective prices therein set forth, upon the clear, distinct and express contract and agreement made and entered into by and between the said John Neely as one of said administrators, and the defendant, at and before the time of said sale, that the purchase money for said black horse, buggy, buggy tongue and set of harness mentioned in said plaintiff's statement, and amounting in the aggregate to five hundred and eighty dollars, should be appropriated and applied to the full payment, satisfaction and extinguishment of this said defendant's said individual account against the said Thomas Neely, and that this defendant should pay to the said John Neely, as one of said administrators, the difference between his said individual account and the amount of the purchase money for said black horse, buggy, buggy tongue and set of harness, which said difference was ascertained to be sixty-nine dollars and seventy-four cents and was paid by this defendant to the said John Neely, as one of said administrators, before the time of the bringing of this suit, and that this defendant would not have purchased the above mentioned property from the said John Neely as one of said administrators, upon any other terms, conditions or considerations than that the price thereof, as above set forth, should and would be applied to the payment, satisfaction and extinguishment of the said defendant's individual claim or account against the said Thomas Neely.

" That when this said defendant received from the said John Neely, as one of said administrators, the said black horse, buggy, buggy tongue and set of harness, he entered a credit on his said individual claim or account against the said Thomas Neely for the said sum at which he had purchased the said above-mentioned property, to wit : the sum of five hundred and eighty dollars, whereby he fully satisfied and extinguished his said individual account or claim against the said Thomas Neely, deceased, and left this defendant in debt to the said John Neely

as one of said administrators, in the sum of sixty-nine dollars and seventy-four cents, which said last-mentioned debt or sum this defendant paid to the said John Neely, as one of said administrators, before the bringing of this suit."

Plaintiff on the trial offered in evidence his statement, and the affidavit of defence, admitting the receipt of the goods, etc., and rested.

Defendant then offered to prove, by his own testimony, the contract with plaintiff, that the debt due by plaintiff's decedent should be set off against the amount due by defendant, that plaintiff went over the account, and that the contract was executed, defendant paying the balance due. Defendant also offered in evidence the check used to pay the balance; also the items of the book account showing the claim of defendant against plaintiff's decedent, used and examined by plaintiff in the settlement. Also the record of proceedings before an auditor, distributing plaintiff's decedent's estate, with the notes of testimony. A witness was offered to testify that plaintiff was present before the auditor and admitted that defendant's account was correct. All this evidence was objected to as not admissible under the general pleas or under the notice of special matter. Received and exceptions noted. [1–13]

Plaintiff proposed to ask his witnesses in rebuttal whether or not, in a conversation between plaintiff and defendant, it was stated or anything was said about or to the effect that the price of the property was to be credited upon an account of plaintiff's decedent, for the purpose of contradicting defendant. Objected to as leading, objection sustained and exception. [14–16]

The court charged in part as follows:

" [You will consider and determine, from all the evidence, whether or not it was agreed by the plaintiff and defendant, when the sale of the goods was made, that they should be paid for at the price agreed upon by crediting said price on the indebtedness of Thomas Neely to the defendant, whether or not there was an indebtedness on the part of Thomas Neely to the defendant at the time of Thomas Neely's death, in May, 1884, which was recognized and accepted by the plaintiff; whether or not the parties to this suit afterwards went over the defendant's books, and whether or not the plaintiff admitted the correctness of any such claim of indebtedness by Thomas Nee-

ly, and whether or not they settled on July 20, 1889, and included in said settlement the $580 now sued for in this action. The record evidence of the auditor's report and evidence of distribution and decree of distribution, together with the accounts and the testimony of the witnesses in connection therewith, show that the plaintiff, in his administration account, accounted for the $580, the price of the goods, and that the same was distributed with the balance on the account among the creditors of Thomas Neely, deceased, before the commencement of this suit. The estate was insolvent and was distributed pro rata among the creditors. The defendant's account, made out by him, was handed to the auditor by the plaintiff. It shows a balance due to the decedent's estate of $69.74, which was deducted from another account, claimed by John Bair & Son, of which firm John Bair, the defendant, was a member. The defendant was awarded nothing on his claim. This is a contest entirely between the plaintiff and the defendant, and one or the other must lose this money in the event of either of their respective claims and contentions being allowed by your verdict. If you are satisfied, from the evidence, that Thomas Neely, at his death, was indebted to the defendant, as claimed by him; that the plaintiff, John Neely, recognized as valid such indebtedness and sold the horse, buggy, etc., to the defendant for the said sum of $580, and agreed that such price should be credited on Thomas Neely's indebtedness to the defendant, and that such credit was given upon the delivery of the goods; that the parties afterwards settled all their claims, including in said settlement the said sum of $580, and that this balance, for which it was claimed the defendant gave his obligation to the plaintiff, was afterwards paid, then your verdict should be for the defendant.

" I instruct you, as a matter of law, that while the plaintiff, as administrator of Thomas Neely, deceased, could not make a contract, such as was asserted here by the defendant, to affect the creditors of the decedent, he would be bound by such a contract himself if the parties executed and acted upon it. If there was an indebtedness by Thomas Neely to the defendant, which was recognized and admitted by the plaintiff, as his administrator, and the parties made the contract as claimed by the defendant, to wit: that the price of said goods should be cred-

ited upon such indebtedness, and the alleged contract was executed by the defendant, entering the stipulated credit on Thomas Neely's indebtedness to him and by including it in the final settlement or other acts in this case, then it is binding on each of them. The transaction took place within a year from the death of Thomas Neely, and if you should be satisfied, from the evidence, that the contract was that claimed by the defendant, and it was executed by delivery of the goods under it—it was a voluntary payment by the plaintiff, and in that event he cannot recover the money in this action. On the other hand, if you are satisfied from the evidence that the contract for the sale of these goods was as testified to by the plaintiff, John Neely, that Thomas Neely at his death was not indebted to the defendant, or that the plaintiff did not acknowledge or recognize such indebtedness, that these goods were not settled for in 1889, as claimed by the defendant, but were excluded from that settlement as testified to by the plaintiff, and that the said price, or part thereof, is still due and unpaid, then your verdict should be for the plaintiff for the amount of said balance unpaid and interest from the date of sale and delivery of the goods. You will carefully consider all the testimony in this case, all the witnesses, and the papers and records admitted by the court, and render such verdict as in your judgment the preponderance of the evidence shall warrant."] [17]

Plaintiff's points were as follows :

"1. An administrator has no power to agree that the amount of a purchase of his decedent's goods from him shall be credited on a debt due from the decedent to such purchaser ; and he cannot be compelled to adhere to such an agreement, the estate being insolvent. *Answer :* We cannot affirm this point as written. An administrator has not the power to make such an agreement to affect the right of creditors of a decedent. If he make such an agreement and execute it by the delivery of the goods it is binding upon the administrator." [18]

" 2. The defence set up in this case is : That plaintiff agreed that the price of the goods sold defendant should be paid for by a credit on the account claimed by defendant against plaintiff's decedent. This was either, first, an agreement to bind the estate (admitted and proved to be insolvent) in such manner as to take the assets out of the course of distribution provided

by law; or, second, it was an assumption by the plaintiff personally of a portion of his decedent's indebtedness to the defendant. In neither view is this defence admissible. As administrator, plaintiff had no power to make such an agreement. He cannot be held to it personally, because there was no valid consideration to support such a promise; nor was there any memorandum of the contract in writing signed by him as is required by the statute of frauds. *Answer :* This point as written cannot be affirmed. Its statement of the facts of the defence cannot be affirmed. If the agreement mentioned in the point was made and executed, it is binding upon the parties to it, but could not affect the creditors of the decedent." [19]

" 3. The defence attempted to be set up in this case was an equitable one that before the procedure act of 1887, under the law and the rules of court, might have been especially pleaded or given in evidence under equitable pleas; and under the rules of court adopted May 24, 1887, could only be admitted at the trial under the notice of special matter. Therefore all of the evidence of facts not mentioned in the notice of special matter was inadmissible and must be disregarded by the jury. Particularly the jury must disregard all testimony in regard to the alleged admissions by the plaintiff of the correctness of the account of Bair v. Thomas Neely, and of the agreement to give the goods on the account and also all testimony in regard to what was done and said before Levi Maish, the auditor." Refused. [20]

" 4. There being no legal evidence in this case that John Bair had any account or claim that was valid or legally enforceable against Thomas Neely at the time of his death or at the time of the sale of these goods, all evidence of dealings or negotiations based thereon was irrelevant and immaterial, and must be disregarded by the jury. *Answer :* This point is not correct. It cannot be affirmed with the statement of facts therein contained." [21]

" 5. Defendant's admission shows that at the time of the death of Thomas Neely, he and the defendant were partners in the whiskey business and other matters which he has not explained; and he has further admitted that some of the items of the account produced by him were partnership transactions. In the face of these admissions, defendant could not maintain

an action against Thomas Neely or his administrator, nor can he interpose his accounts as a set-off or defence to an action by them, without showing affirmatively a settlement of the partnership accounts, a balance struck and a promise to pay. *Answer:* This point cannot be affirmed by the court as written, and is refused." [22]

" 6. All of the items of the account attempted to be set up as a defence by the defendant are barred by the statute of limitations and were at the time of the bringing of this suit, and therefore are inadmissible as a defence; and no recognition of their correctness by the plaintiff, if now repudiated by him, can remove the bar of the statute. This account of defendant cannot now, in the face of plaintiff's objection, be admitted or considered as a set-off or a defence to the plaintiff's claim. *Answer:* This point is not correct, under the evidence in the case." [23]

" 7. Under the plea of payment nothing can be proven, except the specific liquidation of a debt due by the party pleading it to another. If therefore the chattels claimed for in plaintiff's statements were sold by him to defendant under the agreement alleged by defendant that they were to be credited on defendant's account against plaintiff's intestate, these facts are not evidence under the plea of payment. *Answer:* This point is not correct, as written; under the plea of payment in this case with the notice of special matter filed under the rule of court, the facts mentioned in the point are evidence under the plea of payment and non assumpsit." [24]

" 8. The defendant in this case upon all the evidence has failed to establish any legal defence to the plaintiff's claim, and the verdict of the jury must be for the plaintiff." Refused. [25]

" 9. If the jury believe from the evidence that the plaintiff did agree with defendant that the price of the property sued for should be credited on defendant's account against Thomas Neely, then such agreement was not binding upon plaintiff and was revocable by him, and if the jury further believe that prior to the distribution of his intestate's estate plaintiff repudiated such contract and gave defendant notice to present his claim to the auditor, such credit is no defence, and what plaintiff did in reference to defendant's account before the auditor does not estop him from recovery in this suit. *Answer:* This point is correct if the jury believe from the evidence that the agreement made as stated was not executed by the parties." [26]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–16) rulings on evidence; (17–26) instructions; quoting instructions, and bills of exception, but not evidence.

*Henry C. Niles, W. F. Bay Stewart* and *George E. Neff*, for appellant.—Upon the authority of Stephens v. Cotterell, 99 Pa. 192; James's Ap., 89 Pa. 57, and Fritz v. Thomas, 1 Whart. 65, it was asserted that an administrator has no power to agree that the amount of a purchase of his decedent's goods from him shall be credited on a debt due from decedent to the purchaser; and cannot be compelled to adhere to such an agreement, if made.

It is the general policy of the law, rather than regard for any particular creditors, that absolutely deprives an administrator of the capacity to make such a contract as was offered and admitted here; and, if he does attempt to make it, he cannot be held to it.

If claims against decedent's estate can be established, simply by proving that book entries have been exhibited to the administrator; then would such trusts be in more peril than has ever heretofore been supposed: Fritz v. Thomas, 1 Whart. 71.

A creditor by receiving a part of his claim does not thereby surrender his right to collect the balance, no matter what his debtor may assert about full satisfaction.

To constitute an estoppel in pais at least three ingredients must be affirmatively shown: (1) Misrepresentation, or willful silence by one having knowledge of the fact. (2) That the actor having no means of information was by the conduct of the other induced to do what otherwise he would not have done. (3) That injury would ensue from a permission to allege the truth: Com. v. Moltz, 10 Pa. 527; Wight's Ap., 99 Pa. 425; Hill v. Epley, 31 Pa. 331. None of these elements were shown or offered to be shown in this case.

Plaintiff, for the purpose of contradicting defendant, had a right to ask his witnesses whether anything was said by plaintiff or defendant that the price of the property was to be credited on defendant's account against Thomas Neely: 2 Phillips' Ev., p. 895; Wilson v. McCullough, 23 Pa. 440.

*R. E. Cochran, N. M. Wanner* and *Smyser Williams* with him, for appellee.—Payment is a matter of agreement. Whatever the parties intend for payment is payment. The law esteems that payment which the parties have treated as a payment: Heath v. Page, 48 Pa. 130.

The contract was fully executed by the parties and the subsequent discovery that the estate was insolvent cannot clothe plaintiff with the right to recover back this payment, especially if plaintiff had told defendant the estate was solvent at the time of these transactions, as the latter testified he did: Carson v. McFarland, 2 Rawle, 118; Hinkle v. Eichelberger, 2 Pa. 483; Heppard v. Baylard, 1 Whart. 223; Ege v. Koontz, 3 Pa. 109; Boas v. Updegrove, 5 Pa. 516; During, King & Miller's Ap., 13 Pa. 224; Montgomery's Ap., 92 Pa. 202; Hulme v. Miller, 126 Pa. 281.

All the testimony offered, the admission of which is assigned for error, was offered under defendant's pleas of non assumpsit, and payment, and was properly admitted whether set out in the notice of special matter or nor: Heck v. Shener, 4 S. & R. 249; Gaw v. Wolcott, 10 Pa. 43; Beals v. See, 10 Pa. 59; Stansbury v. Marks, 4 Dallas, 130; Lyon v. Marclay, 1 Watts, 271; Falconer v. Smith, 18 Pa. 130; Scott v. Kittanning Coal Co., 89 Pa. 231; Van Storch v. Griffin, 77 Pa. 504; Dawson v. Tibbs, 4 Yeates, 349; Troxell v. Lehigh Crane Iron Co., 42 Pa. 515; Moyer's Admrs. v. Fisher, 24 Pa. 515; Hobson v. Croft, 9 Pa. 363; Smaltz v. Ryan, 112 Pa. 423.

There was no promise on the part of plaintiff to assume the debt of his decedent.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 2, 1893:

This case was here before, on appeal from refusal of the court to set aside the judgment of nonsuit, and is reported in 144 Pa. 250. The facts as they were developed on the last trial are fully and correctly stated by the learned judge who presided thereat, and need not now be repeated at length. In substance, plaintiff claimed that, in June, 1884, as administrator of Thomas Neely, he sold and delivered to the defendant John Bair, who died since the trial, certain articles of personal property at prices aggregating $580, which, with interest, less a credit of $69.74, amounted when suit was brought to $698.03. Defend-

ant admitted having received the property at the prices claimed; but, by way of confession and avoidance, he averred that he did so "upon the clear, distinct and express contract and agreement," between plaintiff and himself, that said price or sum "should be appropriated and applied to the full payment, satisfaction and extinguishment of the said defendant's individual account of $510.26 against the said Thomas Neely," etc. Having thus admitted the delivery of the property to himself, at the prices claimed by plaintiff, he assumed the burden of proving the contract under which he alleged the same was received. He accordingly introduced testimony tending to prove not only that the contract was made, as claimed by him, but that it was fully executed, with the knowledge and co-operation of the plaintiff, before this suit was brought.

More than that, it was also shown, and the jury must have found, that plaintiff, as administrator of Thomas Neely, accounted for the price of said property, and that the same was distributed among the creditors of his intestate; and, also, that the personal account of defendant against said decedent, in which was credited the price of said property, was presented by plaintiff to the auditor charged with said distribution. That statement of account, the correctness of which was then and there admitted by plaintiff, showed a balance of $69.74 in favor of Thomas Neely's estate. That sum was deducted by the auditor from the account of defendant's firm, John Bair & Son, against said estate. The individual account of defendant against Thomas Neely, in which was credited the price of the personal property in question, being thus settled and fully paid with plaintiff's knowledge and active co-operation, did not participate in the distribution. After all this was done, this suit was brought by plaintiff to recover the price of said property which, as defendant's testimony tended to prove, had been previously settled and paid in the manner above stated. This is an outline of defendant's contention, and his evidence, part of which was the auditor's report, tended strongly to sustain it.

On the other hand, plaintiff contended that there never was any agreement as to how the price of the property in question should be applied, and that it never was applied, with his consent, to the payment of John Bair's individual account against Thomas Neely. His testimony tended to sustain that conten-

tion; and thus there was a manifest conflict of testimony on the controlling facts of the case. That, of course, was a matter exclusively for the jury. The case was submitted to them in a clear, concise and impartial charge, in which, after referring at considerable length to the testimony, the learned judge instructed them, inter alia, as set forth in the seventeenth specification of error, and refused to affirm either of the nine points for charge submitted by the plaintiff. His answers to these points are the subjects of complaint in the eighteenth to the twenty-sixth specifications inclusive.

The verdict was for the defendant. That conclusion of the jury is of course predicated of their finding, in his favor, the disputed questions of fact, so far at least as they are material according to the court's view of the law.

If it were not for the fact, established by the verdict, that the contract claimed by the defendant was made and fully executed, and the further undisputed facts, that the price of the property was fully accounted for and distributed among the creditors of plaintiff's intestate, and that defendant's personal account was excluded from participation in that distribution, there would be some force in the legal position so earnestly contended for by the learned counsel for plaintiff. But in view of the fact that Thomas Neely's creditors received all they were entitled to, the only parties who could be considered in the issue were the plaintiff and defendant. The former was confronted with his contract, in the execution of which he actively cooperated. It follows, therefore, that, ex æquo et bono, he should not be permitted to pocket, in his own right, the price of the property in controversy. The evidence, as to his action in presenting defendant's personal account, and inducing the auditor to pass upon the same as he did, presents sufficient ground for estoppel also, but that was neither urged nor acted upon in the court below.

The specifications of error are numerous; but several of them relate to substantially the same questions. The first thirteen are to the admission of defendant's offers of testimony recited therein respectively. Neither of these specifications is according to rule and therefore not entitled to notice. But, waiving that, it may be remarked that all the offers are to prove facts bearing more or less directly upon the defence that

was interposed ; and, from what has already been said as to that, it will be seen that they were not improperly admitted.

The fourteenth to sixteenth specifications complain of the rejection of plaintiff's offers recited therein.   The objection was to the leading character of the offers rather than to relevancy or competency of testimony.   The court very properly said that the witness should be permitted to state what occurred in the conversation referred to, without having his attention called to any particular matter in the manner proposed.   Some latitude of discretion in such matters must always be accorded to the trial judge.   There appears to be no error in either of these rulings.

Incidental reference has already been made to that part of the learned judge's charge complained of in the seventeenth specification.   An examination of it in connection with the testimony discloses no substantial error.   It is a clear and accurate presentation of the case, both as to the facts, which the testimony tends to prove, and the law applicable thereto.   It requires no further vindication either by argument or citation of authorities.

The remaining nine specifications are to the court's answers to plaintiff's points hereinbefore referred to.   Considered in connection with the testimony properly before the jury, it would have been error to have affirmed without qualification either of these points as presented.   We find no error in either of said answers.

Further discussion of the questions intended to be raised by the assignments of error is deemed unnecessary.   The case was well and carefully tried, and there appears to be nothing in the record that would justify a reversal of the judgment.

Judgment affirmed.